UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BASIL MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-1552-JLR-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Basil Martinez appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a sixty-two year old man with a high school education and some college. Administrative Record ("AR") at 32-33. His past work experience includes employment as a meat cutter at several supermarkets, as well as a forklift driver, saw operator, and packager at Lynden Door. AR at 34-38, 52-53. At the time

REPORT AND RECOMMENDATION - 1

of the administrative hearing, plaintiff was employed as a part-time security guard at Lynden Door working six-hour shifts three days per week. AR at 40-41, 52.

On September 16, 2009, plaintiff filed an application for DIB, alleging an onset date of August 28, 2009. AR at 31, 129-30. Plaintiff asserts that he is disabled due to glaucoma and diabetes. AR at 66-68, 72-73.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 66-68, 72-73. Plaintiff requested a hearing, which took place on November 16, 2011. AR at 26-63. On February 26, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits. AR at 7-21. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On August 29, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Martinez bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On February 6, 2012, the ALJ issued a decision findin1g the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant engaged in substantial gainful activity during the following periods: October through December 2010.

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the alleged onset date, August 28, 2009, through the date of this decision.

4. The claimant has the following severe impairments: diabetes mellitus and glaucoma.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). The claimant can lift and/or carry up to twenty-five pounds frequently and lift fifty pounds occasionally. The claimant can sit for about six hours in an eight-hour a day, and stand and/or walk about six hours in an eight-hour day, with normal breaks. The claimant's ability to push and/or pull is unlimited except for the lift/carry limitations. The claimant can balance frequently, stoop, kneel, crouch, and climb ramps or stairs occasionally, but cannot climb ropes, scaffolds, or ladders, nor crawl. The claimant is limited to occasional far acuity and accommodation;

near acuity requirements should not be present. The claimant should avoid driving motor vehicles during evening or nighttime hours.

7. The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8. The claimant was born on XXXXX, 1949 and was 60 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date.[2]

9. The claimant has at least a high school education and is able to communicate in English.

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

11. Alternatively, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12. The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2009, through the date of this decision.

AR at 12-21. (Footnotes omitted)

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by finding that plaintiff had engaged in substantial gainful activity as a security guard from October through December 2010, and therefore had past relevant work as a security guard?

2. Did the ALJ meet his burden at step five by applying the medical-vocational guidelines or by citing to the job of kitchen helper?

Dkt. 10 at 1; Dkt. 14 at 2-3.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VII.   DISCUSSION

A. <u>The ALJ Erred by Finding that Plaintiff Engaged in Substantial Gainful Activity as a Security Guard from October through December 2010 and Therefore Had Past Relevant Work As a Security Guard</u>

Plaintiff's first assignment of error involves the ALJ's finding that plaintiff's part-time job as a security guard constituted substantial gainful activity for the fourth quarter of 2010, and therefore constituted "past relevant work." AR at 12, 17-19. "Past relevant work" is work (1) performed within the past fifteen years, (2) constituting substantial gainful activity ("SGA"), and (3) lasting long enough for the individual to have learned how to perform the work. 20 C.F.R. §§ 416.960(b)(1), 416.965(a). The Commissioner considers average monthly earnings in determining whether a claimant has or has not engaged in SGA. *See* 20 C.F.R. § 416.974(b). Monthly earnings below the threshold set by the SSA give rise to a presumption that a claimant has not engaged in SGA, and in that circumstance the burden shifts to the Commissioner to make findings supported by substantial evidence that the claimant's work constituted SGA despite the low earnings. *See Lewis v. Apfel,* 236 F.3d 503, 515 (9th Cir.2001) (citing 20 C.F.R. §§ 404.1520(e), 404.1560, 404.1565, 404.1571–1572, 404.1573, 404.1574(b)(2)-(3)).

The ALJ found that plaintiff engaged in substantial gainful activity from October through December 2010. AR at 12 (citing 20 C.F.R. § 404.1520(b)). Specifically, the ALJ made the following findings:

> The claimant has worked as a part time security guard for Parker Corporate Services, Inc., (Parker) since October 2009 (Ex. 13/E/1, Hearing Testimony). During this period of time, the claimant has generally earned less than the threshold level for substantial gainful activity (SGA) (See e.g., Ex. 6D, 8D). However, during the fourth quarter of 2010, the claimant earned $3,557 from Parker, or an average of $1,186 per month for over three months (Ex. 6D/1). The threshold level for SGA in 2010 was $1,000, and I find the claimant earned over SGA during October, November, and December 2010.

REPORT AND RECOMMENDATION - 7

AR at 12.

At step four, the ALJ cited the vocational expert's testimony during the hearing that plaintiff "has past work as a Security Guard/Merchant Patroller (DOT #372.667-038) which is light, semiskilled (SVP 3) work[.]" AR at 17. However, the ALJ concluded that "[b]ased upon the Dictionary of Occupational Titles (DOT), I conclude the claimant's past work as a security guard more closely fits with Security Guard (DOT #372.667-034), which is light, semiskilled (SVP 3) work." AR at 17. Although the job, as described in the DOT, requires frequent far acuity and the ALJ found plaintiff limited to occasional far acuity, the ALJ concluded that "the claimant is able to perform the job of a security guard as it is actually performed." AR at 19. Thus, the ALJ found plaintiff not disabled at step four because he could perform his past relevant work as a security guard as he had actually performed the position. AR at 19.

Plaintiff contends that the ALJ erred by finding that plaintiff's past relevant work as a security guard was performed at the "substantial gainful activity" level from October to December 2010, and could therefore be considered "past relevant work" which could result in a finding of non-disability at step four. Dkt. 10 at 4. Specifically, plaintiff argues that the ALJ's method of averaging a select quarter from 2010 when plaintiff had higher earnings, rather than averaging his earnings from the "entire period of work requiring evaluation," ran afoul of the applicable regulations and SSA policy. Plaintiff points out that the ALJ improperly focused on a quarter in which plaintiff had unusually high earnings, when "the fact that the Commissioner employs averaging implies that a temporary increase in wages above [SGA] levels should not result in a finding of [SGA]." *Id*. at 7.

The applicable regulations provide that "If your work as an employee . . . was continuous without significant change in work patterns or earnings, and there has been no

REPORT AND RECOMMENDATION - 8

change in the substantial gainful activity earnings levels, *we will average your earnings over the entire period of work requiring evaluation* to determine if you have done substantial gainful activity." 20 C.F.R. § 404.1574a ("When and how we will average your earnings") (emphasis added).  In addition, SSR 83-35 explains the SSA's "policy on the method of averaging earnings in determinations as to whether work is substantial gainful activity (SGA) under the disability provisions of the law."  Specifically, SSR 83-35 provides as follows:

> [W]hen an employee's earnings or work activities vary somewhat from month-to-month, it may be necessary to average the "countable earnings" reported over a number of months in order to compare those earnings with the applicable monthly amount in the Earnings Guidelines. Generally, such earnings are to be averaged over the entire period of work requiring evaluation. However, it will be necessary to average separately the distinct periods of work involved when there is a regulatory change in the SGA earnings level or there is a significant change in work patterns or earnings.

Thus, earnings are averaged over separate periods of work, other than "the entire period of work requiring evaluation," only when one of two potential two circumstances arise: (1) "When an individual works over a period of time during which the SGA level changes," in which case earnings are not averaged over the entire period of work involved but "over each period for which a different SGA level applies," and (2) "when there is significant change in work patterns or earnings during the period of work requiring evaluation," because "when there is such a change, it would not be appropriate to average earnings over the entire period of work, since one period of work activity may not be representative of the other period . . . When there is a significant change in work patterns or earnings, the earnings must be averaged over each separate period of work involved to determine if either effort was SGA." SSR 83-35, at *4.[3]

---

[3] The second example following 20 C.F.R. § 404.1574a illustrates the latter scenario. Specifically, it describes a hypothetical claimant who "had increased her secretarial skills to journeyman level" and was promoted as a result, permanently increasing her earnings effective

REPORT AND RECOMMENDATION - 9

The only work plaintiff has performed as a security guard was for Parker Corporate Services beginning on September 15, 2009 through at least the date of the hearing on November 16, 2011.  AR at 155, 176.  Plaintiff's earnings records show that in 2009 he worked as a security guard from September 15, 2009 through December 31, 2009, earning a total of $2,881.30.  AR at 145.  These earnings, divided by 3.5 months, equal a monthly average of $823.23, which is less than the presumptive substantial gainful activity ("SGA") earnings threshold set by the SSA that year of $980.  *See* 20 C.F.R. § 404.1574(b) and http://www.socialsecurity.gov/oact/COLA/sga.html.

In 2010 and 2011, the presumptive SGA level increased from $980 to $1,000.  *See* 20 C.F.R. § 404.1574(b) and http://www.socialsecurity.gov/oact/COLA/sga.html.  As discussed above, "[w]hen an individual works over a period of time during which the SGA level changes," earnings are not averaged over the entire period of work involved but "over each period for which a different SGA level applies."  SSR 83-35, at *4.  Thus, plaintiff's earnings from 2010 and 2011, when the SGA level increased from $980 to $1,000, are averaged together.  Plaintiff worked as a security guard from January 1 through December 31, 2010, and earned a total of $11,547.50.[4]  AR at 150.  According to a direct deposit voucher from Parker to the plaintiff dated November 1, 2011 (shortly before the November 16, 2011 administrative hearing), plaintiff's year-to-date earnings from January 1, 2011 through November 1, 2011 were $8,852.50.[5]  AR at 152.  Thus, plaintiff's earnings for the period of January 1, 2010 –

---

in a given month. The Commissioner explains that her earnings are averaged for the period prior to her promotion *separately* from the period following her promotion "because there was a significant change in work activity and earnings" beginning in the month of her promotion, resulting in a finding that she performed SGA after that date.

[4] Plaintiff points out that these earnings, divided by 12 months, equals a monthly average of $962.29.

[5] Plaintiff points out that these earnings, divided by 10 months, equals a monthly average of $885.25.

REPORT AND RECOMMENDATION - 10

1  November 1, 2011 totaled $20,400.00, which (divided by 22 months) equals a monthly average

2  of $927.27.  Again, this fell below the SSA's $1,000 presumptive SGA level for 2010 and

3  2011.

4        The Commissioner "does not dispute Plaintiff's calculations and conclusion that, when

5  averaged over the year he performed his work, his wages were not presumptive substantial

6  gainful activity (SGA), pursuant to SSR 83-35[.]" Dkt. 14 at 5.  However, the Commissioner

7  asserts that earnings are not the only measure of SGA and "although the average for the entire

8  period may not indicate SGA, a disability adjudicator would not be barred from finding that the

9  individual has the ability to engage in SGA, if the medical and vocational factors of the case

10  support such a conclusion." *Id*. (citing SSR 83-35 at *2).  The Commissioner further argues

11  that "throughout the ALJ's decision, he discussed the medical evidence and Plaintiff's own

12  statements regarding his capabilities," and therefore "the ALJ's decision, read as a whole,

13  shows that he found the evidence demonstrated Plaintiff had the capabilities to meet the

14  requirements of the security officer job, and his assessed RC did not preclude the ability to

15  sustain work as a security guard as actually performed by Plaintiff." *Id*. at 6, 8.

16        The Court is unpersuaded by the Commissioner's argument that the ALJ *could* have

17  found that, although plaintiff's average earnings may not indicate SGA, plaintiff nevertheless

18  has the ability to engage in SGA.  *See* 20 C.F.R. § 404.1574(b)(3)(ii) ("When we will consider

19  other information in addition to your earnings.").  This Court can affirm the ALJ's decision

20  "only on the grounds articulated by the agency." *Ceguerra v. Secretary*, 933 F.2d 735, 738

21  (9th Cir. 1991).  As discussed above, the ALJ did not explicitly find that plaintiff's work as a

22  security guard constituted SGA despite earnings that fell below the presumptive SGA level.

23  Rather, the ALJ focused on plaintiff's earnings for the fourth quarter of 2010, when "the

24  claimant earned $3,557 from Parker, or an average of $1,186 per month over three months (Ex.

REPORT AND RECOMMENDATION - 11

6D/1)," and concluded that "the claimant earned over SGA during October, November and December 2010." AR at 12. The Court therefore declines the Commissioner's invitation to insert a finding that plaintiff has the ability to engage in SGA, even if his earnings did not meet presumptive SGA levels, into the ALJ's written decision.

Accordingly, the Court finds that the ALJ erred by utilizing an improper method to calculate plaintiff's SGA. Specifically, the ALJ improperly averaged one quarter of earnings separately from plaintiff's entire period of work (a quarter in which plaintiff happened to make somewhat more money than in other quarters) and concluded that he had engaged in SGA during that quarter, without providing a legally adequate reason for separately averaging the earnings for that quarter. As discussed above, the applicable regulations provide that an ALJ is only allowed to average a period of earnings separately from other periods if there was a "significant change in work patterns or earnings," or the SGA level changed. There is no evidence establishing that plaintiff's duties or salary were any different in the fourth quarter of 2010 than they were at any other time, and the SGA level did not change until 2012.

Accordingly, this case must be remanded for further administrative proceedings. On remand, the ALJ shall reevaluate whether plaintiff has performed substantial gainful activity as a security guard pursuant to the applicable regulations and SSA policy. If the ALJ believes that plaintiff can engage in SGA even though his earnings did not meet presumptive SGA levels, or if there is a good reason for extracting the fourth quarter of 2010 because there was a significant change in plaintiff's earnings or pattern of work, the ALJ should explain this in his decision.

B. <u>On Remand, the ALJ Should Reconsider his Findings at Step Five</u>

Finally, the ALJ made an alternative finding at step five that there were jobs which existed in significant numbers in the national economy that plaintiff can perform. Specifically, the ALJ found that Medical-Vocational Rule 203.07 directed a finding of not disabled, "[b]ecause the claimant is capable of handling and working with large objects, and because he can avoid workplace hazards, his visual limitations do not significantly erode the available job base." AR at 20; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 3. The ALJ also found, based upon the VE's testimony during the hearing, that plaintiff could perform work as a kitchen helper. AR at 20.

As a threshold matter, the Commissioner concedes that the ALJ erred by finding that plaintiff could work as a kitchen helper, because of the requirement of frequent stooping and crouching as described in the DOT. Dkt. 14 at 10. However, the Commissioner maintains that the ALJ's "alternative finding at step five that Guideline Rule 203.07 directed a finding of not disabled is supported by substantial evidence and free of legal error." *Id*. at 11. Specifically, the Commissioner asserts that "even if most of the medium occupations were eliminated as inappropriate due to frequent stooping and/or crouching, some medium occupations would still remain in addition to the sedentary and light occupations. The occupational base for medium work alone is approximately 900 occupations. Giving Plaintiff the benefit of the doubt and eliminating two thirds (600) of the occupations, 300 occupations would still remain in the medium work category in addition to 1,600 sedentary and light occupations." *Id*. at 10.

Plaintiff argues that the ALJ found plaintiff's ability to perform medium level work to be limited by the following significant non-exertional limitations: the claimant can stoop and crouch occasionally, the claimant can climb ramps and stairs occasionally, the claimant is limited to occasional far acuity and accommodation, and near acuity requirements should not

REPORT AND RECOMMENDATION - 13

be present. Dkt. 10 at 11 (citing AR at 15). Plaintiff asserts that these are significant non-exertional limitations which preclude reliance on the medical-vocational guidelines. *Id*. at 11-12. Specifically, SSR 85-15 provides that an inability to stoop or crouch frequently would "substantially affect" an ability to perform medium level work. In addition, plaintiff's limitations in climbing, balancing, and visual acuity, when combined with other limitations, would erode the occupational base. Plaintiff therefore contends that even though it is true that each of these limitations, in isolation, may not significantly erode the occupational base, "when all of Plaintiff's non-exertional limitations are considered in combination, the occupational base is substantially impacted. Indeed, the [VE] was only able to identify one job in response to the ALJ's hypothetical question – parks ground keeper, DOT 406.687-010," indicating "I'm at a loss to find additional [occupations] that meets (sic) those parameters." *Id.* (citing AR at 58).[6] Plaintiff further points out that the Commissioner fails to acknowledge or respond to his argument that "his non-exertional limitations *in combination* substantially erode the occupational base for medium, light and sedentary work." Dkt. 15 at 6.

An ALJ may rely on the grids to meet his burden at step five. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" *Id*. (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a VE is required. *Id.* (quoting *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577

---

[6] The ALJ did not find that plaintiff could perform the job of parks groundkeeper, the job cited by the VE during the hearing. AR at 20-21. Plaintiff points out that this job requires occasional near acuity and frequent stooping, and therefore this job is also not possible for an individual with plaintiff's RFC. Dkt. 10 at 15.

REPORT AND RECOMMENDATION - 14

(9th Cir. 1988)). *Accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.")

Here, the Court agrees with the plaintiff that it is not clear that the combination of plaintiff's non-exertional impairments do not substantially erode the occupational base for medium, light and sedentary work. The ALJ only discussed the plaintiff's visual limitations in determining that the occupational base was not significantly eroded at step five, but did not also consider plaintiff's limitations in stooping, crouching and climbing and how those limitations would further impact the occupational base. The ALJ is only excused from relying upon a vocational expert at step five where it is "clear that the limitations has very little effect on the exertional occupational base." SSR 83-14. On remand, the ALJ is therefore directed to reconsider his findings at step five as well.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** days of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed,

//

//

1  the matter will be ready for consideration by the District Judge on April 25, 2014.

2     DATED this 4th day of April, 2014.

                                          */s/ James P. Donohue*

                                       JAMES P. DONOHUE
                                       United States Magistrate Judge

REPORT AND RECOMMENDATION - 16